JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Tyrone Williams, appeals from the judgment of the Common Pleas Court, rendered after a jury verdict, finding him guilty of two counts of felonious assault and two counts of child endangering, and sentencing him to three years incarceration. Williams contends that he was denied his right to effective assistance of counsel, although he represented himself at trial, and that his convictions were against the manifest weight of the evidence. Finding no merit to the appeal, we affirm.
 {¶ 2} In March 2003, the Cuyahoga County Grand Jury indicted Williams on two counts of felonious assault, in violation of R.C.2903.11, and two counts of child endangering, in violation of R.C. 2919.22. Williams pled not guilty to the charges and the matter proceeded to trial.
 {¶ 3} Fourteen-year-old Tyrone Anthony testified that Williams is his biological father, although prior to the incident in question he had seen him only four or five times in his life. On Friday, February 21, 2003, Williams picked up Tyrone and his twin brothers, Torrance and Terrance Anthony, from school. According to Tyrone, Williams was "in a bad mood" because Tyrone's mother, Zonna Anthony, had told him that Tyrone was getting bad grades at school. Williams drove the boys to their home, where Torrance and Tyrone picked up clothes so they could spend the night at Williams' house.
 {¶ 4} On Saturday, the boys played football for a while with Robert, the 13-year-old son of Williams' girlfriend, who lived with Williams, and then Tyrone did his homework. According to Tyrone, when Williams checked the homework and found some misspelled words, he ordered Robert to bring him a belt, and then "whupped" Tyrone "all over" his body over 20 times.
 {¶ 5} Later that evening, Tyrone and Torrance were playing a computer game in Robert's room. Two pit bull dogs that belonged to Williams were also in the room. Tyrone testified that Williams came in the room and, after ordering the dogs out of the room, called them back and said to Tyrone, "you think they won't bite?" Then he pointed at Tyrone, said what Tyrone thought was a Spanish word, and the dog attacked Tyrone's leg. Williams pulled the dog off Tyrone after approximately ten seconds. Tyrone testified that he had heard Williams give the same command to the pit bull on one other occasion when he wanted the dog to chase a cat. Upon hearing the word, the dog immediately chased after the cat.
 {¶ 6} Torrance Anthony, Tyrone's 13-year-old brother, testified that he saw Williams "whup" Tyrone on Saturday at least 20 times. He testified further that he heard Williams give a one-word command to the pit bull before it attacked Tyrone's leg. Williams then told Torrance, "I could let them get on you, too," so Torrance jumped on a dresser in the bedroom, where he stayed until Williams and the dogs left the room.
 {¶ 7} Torrance testified that on Sunday, Williams whipped Tyrone again with a belt and then told him to get in the bathtub and stay there until he returned from bringing Torrance home. Williams took Tyrone home late Sunday night.
 {¶ 8} Zonna Anthony, Tyrone's mother, testified that when Torrance came home, he told her that Williams had "whupped" Tyrone, but he was smiling and laughing as he told her, so she thought he was just telling her a story. When Williams left after bringing Tyrone home, however, Tyrone showed Anthony his bruises from the beating and told her about the pit bull attack. Anthony took Tyrone to the hospital on Monday evening, after she returned from work, and hospital personnel called the police.
 {¶ 9} Detective Christina Cottom testified that she questioned Williams after his arrest. Williams admitted that he had trained his pit bull dogs to attack on command, but denied ordering the pit bull to attack Tyrone and asserted that his pit bull named Blade bit Tyrone's pants because the boys were "messing" with the dogs. Williams admitted, however, that he beat Tyrone with a belt and stated, "I whopped his ass and told him to take a bath. I am gonna make that ass swell. God damn, that's how I was raised, you got your ass whooped, you took a bath."
 {¶ 10} John Sredniawa, dog warden for the Cleveland Police Kennel, testified, in light of his 15 years experience as a dog warden, that pit bulls are vicious, dangerous animals with approximately 1600 lbs. of pressure in their bite. Sredniawa testified further that he confiscated three pit bulls from Williams' home. When he arrived, two of the dogs were so aggressive that Sredniawa had to mace them and then snare them and put a stiff pole around them before he could take them out.
 {¶ 11} Robert Williams testified for the defense that Blade attacked Tyrone because he was "messing with the dog." According to Robert, Williams then ran in the room and pulled the dog off Tyrone. Robert testified further that Williams trained his pit bulls to attack when Williams said the word "tochiny." Robert also testified that Williams "whooped" Tyrone because he had "done bad in school."
 {¶ 12} The jury found Williams guilty of all charges and the trial court sentenced him to three years incarceration. This appeal followed.
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 13} In his first assignment of error, Williams contends that he was denied his right to effective assistance of counsel because he represented himself and was untrained to handle a case. He also asserts that he had a right to assistance, which he did not receive, and that the prosecutor took advantage of the fact that he was representing himself to ask inappropriate questions and make inappropriate comments in closing argument.
 {¶ 14} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that a criminal defendant must be afforded the right to counsel before the trial court may convict and imprison the defendant. A criminal defendant may waive his right to counsel, however, provided he does so knowingly, intelligently and voluntarily.Faretta v. California (1975), 422 U.S. 806; Johnson v. Zerbst
(1938), 304 U.S. 458; State v. Gibson (1976),45 Ohio St.2d 366. Furthermore, although a criminal defendant may choose to represent himself, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open.'" Faretta, 422 U.S. at 835, quoting Adams v.Unites States ex rel. McCann (1942), 317 U.S. 269, 279.
 {¶ 15} Our review of the record in this case reveals that the trial court conducted a thorough inquiry into whether Williams knowingly, intelligently and voluntarily relinquished his right to counsel. On four separate occasions, the trial judge extensively questioned Williams as to whether he understood the seriousness and consequences of his decision to represent himself. The trial court also advised him that by virtue of his or her training, a lawyer would be better equipped to present a defense to the jury. In addition, the trial court advised Williams of the serious nature of the charges he was facing and the penalties for each of those charges. On each occasion, Williams responded that he understood the court's admonitions, yet chose to represent himself. He also signed a written waiver of counsel form. Moreover, contrary to Williams' assertion, the record reflects that he had counsel to assist and consult with him at every stage of the proceeding.
 {¶ 16} In light of his knowing, intelligent and voluntary waiver of counsel, Williams cannot now claim ineffective assistance of counsel. Such a claim is not cognizable where the appellant chose to pursue self-representation with his "eyes open." See Faretta, supra.
 {¶ 17} Williams also claims that the State engaged in prosecutorial misconduct that denied him a fair trial. The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Clemons (1998),82 Ohio St.3d 438, 451, citing State v. Smith (1984), 14 Ohio St.3d 13,14-15. In evaluating claims of prosecutorial misconduct, we evaluate the fairness of the trial, not the culpability of the prosecutor. The conduct of a prosecuting attorney during the trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987),33 Ohio St.3d 19, 24; State v. Maurer (1984), 15 Ohio St.3d 239, 266.
 {¶ 18} Williams initially complains that the prosecutor asked leading questions of the witnesses and "was testifying for the witnesses by asking questions that required yes or no answers." Our review of the record indicates that the State's key witnesses in this case were teenage boys who tended to answer questions monosyllabically rather than narratively, and, therefore, it was necessary for the prosecutor to ask them more detailed questions. Moreover, the record reflects that most of Williams' "questions" to the witnesses were more in the form of testimony than actual questions.
 {¶ 19} We also find no merit to Williams' argument that the prosecutor's comments during closing argument were so egregious as to deprive him of a fair trial. Even assuming the comments were improper, they were an isolated incident, rather than a protracted series of improper argument. See State v. Keenan
(1993), 66 Ohio St.3d 402, 410. When viewed against the entire record, neither the prosecutor's examination of the witnesses nor his closing argument deprived Williams of a fair trial.
 {¶ 20} Appellant's first assignment of error is overruled.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 21} In his second assignment of error, Williams contends that his conviction is against the manifest weight of the evidence. When considering an appellant's claim that the conviction is against the manifest weight of the evidence, the reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting Tibbs v. Florida (1982), 457 U.S. 31,42. The reviewing court must examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982),70 Ohio St.2d 79, 80. The reviewing court may reverse the judgment of conviction if it appears that the fact finder, in resolving conflicts in the evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins,78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 22} Williams was convicted of felonious assault, in violation of R.C. 2903.11, which provides that "no person shall knowingly * * * cause serious physical harm to another or to another's unborn [or] cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 23} R.C. 2901.01(A)(5) defines "serious physical harm," in relevant part, as "any physical harm that involves * * * some temporary, substantial incapacity" or "any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement."
 {¶ 24} "Deadly weapon" is defined in R.C. 2923.11(A) as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 25} Williams contends that the State failed to prove that he caused "serious physical harm" to Tyrone and that he used a "deadly weapon" to do so and, therefore, failed to prove all the elements of the offense of felonious assault. We disagree.
 {¶ 26} In State v. Walker (June 18, 1987), Cuyahoga App. No. 52391, this court held that where injuries are serious enough to cause a victim to seek medical treatment, a jury may reasonably infer that the force used by a defendant caused serious physical harm. Here,
 {¶ 27} Tyrone's mother took him to the hospital to get medical treatment for both the dog bite and the injuries he sustained as a result of his beating by Williams. The photographs of Tyrone's injuries introduced at trial indicated that he had bruises all over his body and his arm was swollen. Anthony testified that one of the doctors told Tyrone to stay home from school for two days to recover from his injuries. Moreover, at trial, Tyrone showed the jury the scars on his leg caused by the dog bite. Thus, there was substantial evidence from which the jury could have concluded, beyond a reasonable doubt, that Tyrone suffered serious physical harm within the meaning of R.C.2901.01(A)(5).
 {¶ 28} There was also evidence from which the jury could have concluded that the pit bull that bit Tyrone was a deadly weapon. Robert Sredniawa testified that pit bulls are vicious, aggressive animals with 1600 lbs. of pressure in their bite. Moreover, there was evidence that Williams trained his dogs to attack on command and that he pointed at Tyrone, gave the attack command and the dog immediately attacked him. In light of this evidence, the jury could have concluded, beyond a reasonable doubt, that the pit bull that attacked Tryone was used as a deadly weapon.
 {¶ 29} Appellant's second assignment of error is therefore overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., and Calabrese, Jr., J., concur..