JOURNAL ENTRY and OPINION
{¶ 1} In these cases that have been consolidated for hearing and disposition, defendant-appellant James Vinson appeals from his convictions for felonious assault with peace officer specifications, aggravated assault, and possession of cocaine, and from the sentences subsequently imposed upon him.
 {¶ 2} Vinson presents five assignments of error in which he claims that his convictions for felonious assault are unsupported by either sufficient evidence or the weight of the evidence, that the trial court denied him his right to a speedy trial and also improperly accepted his guilty pleas in the other two cases, and that his sentences in these cases are contrary to law.
 {¶ 3} After a review of the record, this court cannot agree that Vinson's convictions are improper based upon either the evidence or the length of time the cases were pending against him. Vinson's convictions, therefore, are affirmed. Moreover, a perusal of the trial court's comments during the sentencing hearing reveals it complied with the Ohio Supreme Court's mandate as expressed in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. Vinson's sentences, therefore, also are affirmed.
 {¶ 4} The record reflects Vinson was indicted in the earliest case, viz., CR 436841, as the result of an incident that occurred on the night of March 7, 2003. Two Cleveland Police officers, Todd Marazzi and James Zak, were in the area when they heard a radio broadcast of shots fired at an address on Eaglesmere Avenue near East 140th Street. Marazzi, who was driving the patrol car, decided to respond.
 {¶ 5} Upon their arrival at the Eaglesmere Avenue address, they spoke to a female witness, who, during the brief conversation, pointed out a van a block away on East 140th
Street, indicating the person who fired the shot was inside that vehicle. They watched as the van turned into a nearby residential driveway on Argus Avenue. The witness informed them the house belonged to Vinson. The van stopped, and a man ran to the rear entrance of the residence.
 {¶ 6} Marazzi and Zak quickly reentered their patrol car and went to Vinson's house. Marazzi parked at the end of the short driveway, thereby blocking the van. As he and Zak approached the van with their weapons drawn, another colleague arrived, Officer Jopek. Jopek assisted them in ordering the three passengers out and in placing them against a fence at the edge of the property.
 {¶ 7} Before the three officers could do anything else, the side door of the house, which was approximately nine feet away from them, opened. Vinson stepped out, closing the door behind him. Vinson's manner was irate; he demanded to know why the police were in his yard. One of the men lined up at the fence told Vinson the police wanted to speak to him.
 {¶ 8} In view of Vinson's aggressive attitude, Marazzi asked him to move away from the door and to show his hands until their investigation could be concluded. As he spoke to Vinson, Marazzi could hear the that a dog was present just inside the residence; he heard the clicking of the dog's nails on the flooring.
 {¶ 9} Rather than complying with Marazzi's request, Vinson kept one hand on the door handle and continued to curse at the officers. He further informed them that he had to "put his dog up." Marazzi could hear the dog becoming increasingly agitated; it was growling and urgently scratching at the door. Marazzi told Vinson to remain where he was.
 {¶ 10} Instead, Vinson pivoted as if he were going to reenter the house, shouted at the officers to "get off [his] property," and turned the door handle. Immediately, the dog's muzzle appeared at the door. As Vinson stood just outside, the animal pushed the door completely open and "came charging out."
 {¶ 11} Marazzi saw that what appeared to be a full-grown pitbull dog "launched itself" at him. He was only steps away from his colleagues, so he backed away as he attempted to take aim with his gun. When the dog was within a foot of his groin area, Marazzi "sidestepped," let the dog's momentum carry it past the point where a bullet might harm any of the others, and began firing his weapon at the dog. The other officers joined him; ultimately, between them, the officers discharged fourteen rounds of ammunition. Before the dog died, it continued to crawl toward Marazzi. Vinson uttered nothing throughout the incident.
 {¶ 12} Vinson at that time was arrested; on April 25, 2003 he was indicted on three counts of felonious assault, each with a peace officer specification, and one count of resisting arrest. At his arraignment, Vinson entered a plea of not guilty. The record reflects Vinson was released on bond.
 {¶ 13} While that case was pending, Vinson subsequently was indicted in two additional cases which related to later incidents. In September, 2003, in CR 442710, he was charged with felonious assault with two firearm specifications and with resisting arrest. In October 2003, in CR 450233, he was charged with possession of cocaine in an amount less than five grams.
 {¶ 14} Vinson's three cases were assigned to the same trial court. Pretrial proceedings in the cases occurred nearly every week thereafter; in nearly each instance, the court issued journal entries that stated the cases were continued "at defendant's request for completion of investigation."
 {¶ 15} In March 2004, Vinson signed written waivers of his right to speedy trials, extending the time in each case to August 31. Similarly, after additional pretrial hearings, in January 2005, Vinson again in writing extended the waivers to May 31, 2005.
 {¶ 16} Vinson's trial in the first case, CR 436841 commenced on May 2, 2005. The state presented the testimony of four witnesses: officers Marazzi and Zak, one of the passengers in the van, and John Baird, Dog Warden of the city of Cleveland. The trial court permitted Baird to testify as an expert witness on the subject of dog breeds and behavior.
 {¶ 17} After receiving the evidence, the jury found Vinson guilty of three counts of felonious assault with peace officer specifications. The jury found Vinson not guilty of the charge of resisting arrest. Subsequently, Vinson entered into a plea agreement with respect to the other two cases. In exchange for the amendment of the indictment in CR 442710 to a charge of aggravated assault and the dismissal of both the specifications and count two, Vinson entered guilty pleas in that case and in CR 450233.
 {¶ 18} The court conducted one sentencing hearing for all three cases. In CR 436841 (App. No. 87060), it sentenced Vinson to prison terms of five years on each count of felonious assault, to be served concurrently with each other and concurrently with a term of seventeen months in CR 442710 (App. No. 87056) and eleven months in CR 450233 (App. No. 87058).
 {¶ 19} Vinson presents the following five assignments of error for review:
 {¶ 20} "I. The state failed to present sufficient evidence to sustain appellant's convictions.
 {¶ 21} "II. The appellant's convictions are against the manifest weight of the evidence.
 {¶ 22} "III. The trial court erred when it denied appellant his right to a speedy trial.
 {¶ 23} "IV. Appellant was denied his right to a fair trial when he involuntarily entered his pleas of guilt.
 {¶ 24} "V. The court's imposition of appellant's sentences is not supported by the record. Accordingly, the sentence is contrary to law and violates appellant's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Section Sixteen of Article One (sic) of the Ohio Constitution."
 {¶ 25} In his first two assignments of error, Vinson argues that with respect to his convictions for felonious assault upon a peace officer, the trial court wrongly denied his motions for acquittal. Vinson contends his convictions are supported by neither sufficient evidence nor the weight of the evidence because the state failed to prove: 1) his dog was a "deadly weapon;" 2) he intended to use the dog as such; and 3) he intended to use it to harm either Zak or Jopek. This court remains unpersuaded.
 {¶ 26} A defendant's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crimes has been proven beyond a reasonable doubt. State v.Dennis, 79 Ohio St.3d 421, 1997-Ohio-372; State v. Jenks
(1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172. Circumstantial evidence alone may be used to support a conviction. State v. Gardner, Cuyahoga App. No. 85275, 2005-Ohio-3709, ¶ 18.
 {¶ 27} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin, supra at 175.
 {¶ 28} This court must be mindful, therefore, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to consider. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 29} R.C. 2903.11 states in relevant part that "[n]o person shall knowingly * * * attempt to cause physical harm to another * * * by means of a deadly weapon * * *, as defined in section2923.11 of the Revised Code." R.C. 2923.11 defines a "deadly weapon" as "any * * * thing capable of inflicting death, and * * * possessed, * * * or used as a weapon."
 {¶ 30} In this case, both Marazzi and Zak testified that Vinson angrily emerged from his house, closing the door behind him as he came. His aggressive manner toward them already had incited his animal; the officers could hear it growling and scratching inside. Nevertheless, rather than complying with Marazzi's demand that he step away from the door, Vinson, who was cursing at the officers, turned the handle.
 {¶ 31} By this means, Vinson opened the door and permitted his agitated dog to escape from confinement into the partially-enclosed driveway area. The evidence demonstrated the driveway area was small. Marazzi estimated he stood perhaps nine feet from the side door of Vinson's residence; Zak stated he and Jopek stood nearby. A fence prevented access to the adjoining property.
 {¶ 32} Baird testified that that particular breed of dog was not only very loyal to and protective of its owner, but was used for fighting; thus, it was agile, muscular, and powerful. In particular, the dogs had jaws strong enough to "crush bones" and, once they "grab on" to something, can "just hang [on] for a half hour." Baird further testified that in 1970, the city enacted special ordinances with respect to ownership of pitbull dogs because a child had been "killed" by one.
 {¶ 33} Marazzi testified that he was directly in the dog's line of sight, and that the animal launched itself directly at him, "snarling and barking" in a vicious way. He stated he had no doubt that the animal was "attacking" him. The photographs indicate the dog was of an intimidating size.
 {¶ 34} The state presented evidence, therefore, that sufficiently proved the dog fit the statutory definition of a "deadly weapon" and that Vinson knowingly used it in that manner against all three of the officers on his property. State v.Williams, Cuyahoga App. No. 83402, 2004-Ohio-4085, ¶ 28. The testimony proved the dog already was restrained, because Vinson closed the door prior to confronting the officers and demanding they leave his property. Therefore, the jury reasonably could conclude his purpose in refusing to obey Marazzi's orders was not to secure the animal, but, rather, to allow the dog outside to attack them. Id.
 {¶ 35} For the foregoing reasons, Vinson's first and second assignments of error are overruled.
 {¶ 36} Vinson argues in his third assignment of error that the trial court denied him his right to a speedy trial in all three cases. This argument is rejected.
 {¶ 37} The record reflects not only that Vinson requested nearly every delay, but also that Vinson failed to appear for trial when it originally was scheduled, and, further, that Vinson neglected to raise this issue in the court below. Thus, he willingly relinquished his right to a speedy trial, and waived this argument for purposes of appeal. State v. Shakoor,
Mahoning App. No. 01CA121, 2003-Ohio-5140, ¶ 10. Accordingly, Vinson's third assignment of error also is overruled.
 {¶ 38} In his fourth assignment of error, Vinson claims his pleas in CR 442710 and CR 450233 were neither knowingly nor intelligently made because he received "a promise * * * [of] a certain sentence" from his trial counsel. This assignment of error fails for two reasons.
 {¶ 39} First, Vinson did not include a transcript of the plea hearing in those cases in the record on appeal. Under these circumstances, this court presumes regularity, and therefore, compliance with Crim.R. 11(C) requirements, in the proceedings below. Columbus v. Hodge (1987), 37 Ohio App.3d 68. Second, Vinson's claim is more suited to a motion for postconviction relief, which is not a matter before this court. See, e.g.,State v. Fry (Dec. 11, 1992), Portage App. No. 92-P-0049. Vinson's fourth assignment of error is overruled.
 {¶ 40} Vinson asserts in his fifth assignment of error that the trial court's sentence of a total of five years is "contrary to law." He claims that "the trial court heard no facts for the crimes of either the charges of possession of drugs or aggravated assault" to support the nearly-maximum terms imposed upon him for these crimes. He further claims that "the facts as they related to the three counts of felonious assault do not warrant the imposition of a five year sentence."
 {¶ 41} With respect to Vinson's sentences in CR 442710 and CR 450233, since he provided no transcript of the plea hearing, this court cannot conclude the trial court lacked a basis upon which to choose concurrent, near-maximum terms for Vinson's convictions.
 {¶ 42} Moreover, the trial court prior to imposing sentence in these cases stated that it had first considered "the records, oral statements made [at the hearing], the pre-sentence report, the purposes and principles of sentencing * * *, the seriousness and recidivism factors relevant to this offense and this offender * * *," together with the fact that Vinson had "previously served a term in prison" in choosing a total sentence of five years. Under these circumstances, the trial court complied with its duties as expressed in State v. Foster, supra. This court, therefore, cannot find Vinson's sentence is contrary to law pursuant to R.C. 2953.08(A)(4).
 {¶ 43} Vinson's fifth assignment of error, accordingly, also is overruled.
 {¶ 44} Vinson's convictions and sentences are affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sean C. Gallagher, P.J. and Mary Eileen Kilbane, J. concur.